213972, 3974, 3982, 4070, 4128. Brian Garrett et al. v. The Ohio State University. Arguments not to exceed 20 minutes per side. Ms. Waltz for appellant. May I please the court? I'd like to reserve 10 minutes for a rebuttal. Is there a mic? Can you hear me? Microphone. Yeah, is it on? Is there a way to pull it closer to you? Is this any better? Yes. May I please the court? I'd like to reserve 10 minutes for a rebuttal. You have 20 minutes for argument, right? I think we allocated that time originally before the Snyder-Hill decision was released, but I think we allocated the time so we should stick with it. And if I can use less, I will. Your Honors, this court's published decision in Snyder-Hill v. The Ohio State University, which is at 48F4-686, decided the primary statute of limitations issues in these Garrett and Ratliff consolidated cases. Snyder-Hill requires reversal and remand in these cases because the exact same omnibus order of dismissal is challenged here. That same order of dismissal did not distinguish among the cases. The facts alleged in the complaints are the same, and the same appeal arguments are made by the parties. Applying Snyder-Hill here, these plaintiffs plausibly allege a timely Title IX claim for three independent reasons. First, they did not know that Straus' conduct was not medically necessary and that it in fact constituted sexual abuse. Second, regardless whether they knew that they were abused by Straus, they had no knowledge that Ohio State's deliberate indifference caused that abuse. And number three, even if they had investigated further, they could not have learned of Ohio State's misconduct because of Ohio State's concealment. Isn't that all relevant to the statute of limitations issue? I'm sorry, Your Honor? Isn't that all relevant to the statute of limitations issue? It is all relevant to the statute of limitations issue. You don't need to re-argue that, do you? Exactly. The question raised in these appeals that's left unresolved by Snyder-Hill is whether to remand the cases to a different district judge. Is that the only issue? Are you abandoning your retaliation claim because the motions with respect to whether to have argument suggested that there was only one argument left, the recusal issue? Your Honor, we view the recusal issue as requiring this court to address that issue. The Garrett and Alf cases had raised a constitutional challenge to the borrowing construct state law statute of limitations, and we don't believe that that requires address since reversal is required on the grounds in Snyder-Hill. All the other arguments we would submit on the briefing, we are not waiving the appeal of the dismissal of the retaliation claim, we would just submit those on the briefs. Our intent is to focus on the recusal issue, and to the extent the court is interested, we would also like to address Ohio State's recent suggestion that our case is somehow distinguishable from Snyder-Hill. On disqualification, this court reviews for abuse of discretion. The Blackletter law is clear. 28 U.S.C. 455 B.4 says that disqualification is automatic and unwaivable when a judge knows that he or his spouse has a financial interest in a party to the proceeding. The facts are in our briefs, and in the record, I would direct the court to the Garrett opening brief. I understand your question to be whether the financial interest that the judge has, or the judge's wife has, whether that needs to affect the outcome of the case here. The way that we read 28 U.S.C. 455, is that the financial interest doesn't need to be affecting the outcome. If there is a financial interest, then disqualification is required. Financial interest in what? In one of the parties, in the party to the proceeding. And what language are you relying on for that? We're relying on 28 U.S.C. 455, which speaks only to a financial interest. What specific language that you're relying on? 28 U.S.C. 455 B.4 describes disqualification as being automatic, where the judge knows that he, individually, or as a fiduciary, or his spouse, or a minor child residing in his household, has a financial interest in a party to the proceeding. A financial what? A financial interest in a party to the proceeding. So wouldn't that be most naturally read to mean that, for example, the judge was an investor? So, you know, let's say Walmart is a party and you own Walmart shares. I think that is typically how this section arises in practice, and I think that most of the case law that discusses financial interest is concerned with a judge or his spouse, a member of a household, owning shares in a party that's a corporation. However, I mean, there's sparse case law on a situation where, as here, a judge is being paid by a party to the litigation, and the judge's wife is being paid by a party to the litigation. Well, the judge's wife, as I understand it, has a licensing agreement to license Ohio State flags, some kind of Ohio State merchandise. So if we were to accept your proposition, would that mean that any time a judge or a judge's spouse or a judge's minor child had any kind of contract, no matter how de minimis? So like you have a contract, say his wife was a caterer, a baker, and she occasionally baked cupcakes or flowers, you know, delivered flowers to university events. You'd have to be disqualified because the theory is if they had to pay a judgment in this case, then they'd have less money to buy the flowers or the cupcakes. I just want to know what the boundaries of your argument are. I think it's much more narrow than that. Let me answer in two pieces. I think that the financial interest that's at issue is separate and apart from there being a danger of it affecting the outcome in the case. I think that if there's a financial interest under the language of the statute, the judge is required to disqualify. And in this situation, I think Chief Justice John Roberts addressed this in his year-end report. There was a series of Wall Street Journal articles that came out, and at the end of 2021, Chief Justice Roberts highlighted judicial financial disclosures and recusal obligations as a serious consideration and meriting address. And he said, and I quote, 28 U.S.C. 455, quote, requires that a judge recuse in any matter in which the judge knows of a personal financial interest, no matter how small. Let me be crystal clear. The judiciary takes this matter seriously. We expect judges to adhere to the highest standards. We are duty-bound to strive for 100% compliance because public trust is essential, not incidental, to our function. But was that a case where there was an interest in the party? He was speaking generally, and he was speaking in response, I believe, to Wall Street Journal articles that revealed a number of federal district judges who owned shares in corporations and who had a financial interest, and that the requirement is that a different judge be assigned to those cases or that they divest. I'm sorry. I still don't understand how you define a financial interest in a party. What is your definition of that term? Well, I believe 455 D.4 defines financial interest in terms of the statute, and it defines it as ownership of a legal or equitable interest, however small. I don't have a legal or equitable interest in the Ohio State University. They don't trade in the Ohio State University shares. No, that's accurate. The judge is paid for teaching at the law school, and the judge's wife not only is a licensee, but the OSU makes purchases from her store that creates income for her. Do we have to accept your argument for Utah? I don't believe so, Judge. I think that the other section of 28 U.S.C. 455, which is Section A, that requires disqualification where there is an appearance of impropriety, also applies here. Certainly for our plaintiffs and for the public at large, there is a question about the situation here where Judge Watson is paid by the university, works at the university, his wife has a business relationship with the university, all the facts that appear in the record below in our motions for recusal, all of those under the objective standard that applies would lead a reasonable person to question whether the judge is impartial, and in such a situation, a different judge needs to oversee the case. If we agree with you, does that mean everything that happened so far has to be redone, or are you just saying that on remand it should be reassigned? On remand, Your Honor, I don't think there is anything to be redone. When we go back to district court, we were here on motions to dismiss, we haven't done discovery, we haven't had an answer. I know you've reserved time, but let me ask this question. Somehow, I'm not quite sure how, but on appeal, you were all together in the district court, and on appeal the cases got split up so one panel had Snyder Hill and then we have this. Your clients are the only ones who have moved for recusal, so if we were to grant, if we were to agree with you and say this judge needs to recuse, then what happens? The other parties don't want the judge recused, apparently. They're happy with the judge, I mean, they didn't make a motion, they're not here, so we have to split the cases off? If we agree with you, what happens below? Your Honor, I think that the cases will go together. If the judge needs to be different on remand, then that would be because either there's automatic disqualification for the financial reason, or because there's an appearance of impropriety, and that's a reasonable person, objective standard, and I believe that would apply to all of the cases. But if it's an appearance of impropriety, then a party can waive that, can't it? Yes, Your Honor, that's true. So what if the others, as Judge Larson said, what if the others want to waive it? And then I think the cases could conceivably go to different judges, which then we would have arguments for efficiency to make below. Yes, thank you. May it please the Court, Your Honor, I'm Mike Carpenter, I'm here today on behalf of Ohio State University in this consolidated appeal. And I do want to say, because the University is of today, wants to be sure that no one understands this litigation to be something that they look to, and Ohio State of today has condemned Dr. Strauss's actions and has apologized for them. And I want this panel to know that. I'm sorry, I'm having trouble hearing you. I've got this microphone down here, so let me just say this. The Ohio State of today has apologized for Dr. Strauss's actions and has condemned them. And I want this panel and all who might be listening to know that. And the University has done what it can to reconcile with these survivors. So I do want the Court to understand that we have provided free counseling, we have settled, we have undertaken the Perkins-Cooley report that is at the center of this appeal. Of course, none of that has anything to do with the legal issues before us. But I do want to say, because it has to do with the University of today doing the right thing, which is what the trial judge below asked us to do, Judge Watson. You've got your PR pitch in, so let's go to the legal issues. All right. I also want to say that we believe, and perhaps Judge Guy, you don't want me to go into this, but we believe that under the law and the circuit doctrine, there still is an opportunity for this panel to review the decision of the panel on September 14th of 22 in the Snyder Hill matter. Yeah, explain that to me. I saw that in your motion, but didn't the Snyder, it's not like the Snyder Hill panel overlooked any of the cases that you cite. The Snyder Hill panel dealt with those cases, and even if we were to disagree with those cases, I mean, we have the law of prior precedent. What can we as a panel do about that? They dealt with them. They didn't overlook them. Explain to me how the circuit precedent rule doesn't apply here. What they essentially did is they ignored the precedent of the United States Supreme Court and all of the panels that have ever decided Section 1983 and Title IX. But we can disagree with the panel. Yeah, ignored as in didn't take into account, forgot about, or ignored as in you think misread? No. Those are very different things. I understand, Your Honor. But this court has said that if we cannot rely on decisions that failed to follow the dictates of the Supreme Court and broke from earlier controlling precedent of this circuit, and so I believe that's the law of the circuit doctrine, and they did in fact fail to follow the dictates of the Supreme Court, and they did break from earlier controlling precedent. But that's just saying you lost in Snyder Hill. Well, I guess what I'm saying is that we lost, but under the law of the circuit doctrine, we believe that can be remedied by this panel. Well, I guess there is a line of cases, of course, where there's an apparent binding precedent where it's perhaps because of intervening Supreme Court decisions and whatnot, it seems no longer to fit that a panel might not be bound by it. But in this particular situation, it's a matter of timing, I suppose, but it's hard to make that argument because there's a petition for en banc hearing, and if that were granted, then the en banc court would be the one to see whether the panel's decision stands or not. But it seems to me to be a particularly inappropriate time for us at this time to be saying we're not going to follow. It would probably look like sour grapes on my part. Your Honor, I have been puzzling about that throughout this, so I appreciate you indicating. These cases were broken into separate panels. The Court has just pointed out in the recusal issue how odd it is that some are moving for recusal of Judge Watson, others are perfectly comfortable with him. So there is an inconsistency that is developing, and I have been through some en bancs, and I've never seen an en banc going on concurrently with what I consider to be a violation of the law of the circuit doctrine. But I think that's what's going on here, and I would like to tell you I have ample precedent for how that gets remedied, but I don't. And so we have moved en banc because we think the decision should be vacated and the en banc panel should rule. We don't know the outcome of that yet, whether it will be en banc-ed or not, but we believe this panel can still, under the law of the circuit doctrine, continue to look at whether what the Snyder Hill panel did was irreconcilable with the prior precedent of this circuit and the Supreme Court. And that is the concept that we would articulate here today. We believe it is inconsistent. It's inconsistent with the standard occurrence rule. It has eliminated the statute of limitations, effectively eliminated the statute of limitations. That is something that is, I dare say, irreconcilable with prior precedent. It has likewise- Okay, but counsel, Judge Guy expressed all of those views in his dissent in Snyder Hill, and the majority disagreed with you and with him. And I don't understand the argument that says we as a panel now get to disagree with our colleagues in the majority. I mean, it works two votes to one vote. That's how this court works. I'm not sure I understand that. But let me ask you a different question, if I may.  So you alluded to that in your motion regarding oral argument. There are factual distinctions in this case. In the Snyder Hill case- Ones that matter legally? Ones that matter, I think, pretty directly. Okay. So 79 plaintiffs in the Garrett and Alpha Appeal have admitted in the reply brief before this panel, in this case, that they knew what Strauss did to them was sexual abuse. That was not before the panel before. There were a few, a handful. Yeah, but how does that make a difference to the statute of limitations issue? From a standpoint of when the injury accrued, and from the standpoint of when the injury occurred, under the Cotteridge case and under the Foster case of this circuit, it is the pervasive sexual acts that caused them to be denied their educational benefits and opportunities. And so here, these 79 plaintiffs have admitted they knew the abuse was such that it denied them of their educational opportunities and benefits. How does that address the Ohio OSU's knowledge or involvement or acquiescence? Well, now we're dealing with the deliberate indifference prong of that and the new injury discovery and deliberate indifference discovery rule from the Snyder-Hill case. And the allegations here, likewise, alleged, unlike in the Snyder-Hill case, that the persons who were aware of the situations, the Strauss conduct and what was occurring, rose to the level of athletic directors, high-level associates in the administration. And so I believe on the deliberate indifference, it is simply not plausible, given the allegations in these cases of the persons who knew. All of the cases before you, those allegations are present here. Isn't that something that should be evaluated on remand? It could be evaluated de novo by this panel, which I believe is the standard for review here. Wait, I'm sorry, I didn't quite understand the argument. So all these plaintiffs, I think it's the Garrett and Alf plaintiffs, so they knew that they were being abused when the abuse occurred? Correct. But the Title IX claim is that Ohio State, because there's no respondeat superior liability, only Ohio State's knowledge matters. So why does it, I'm just scratching my head on the statute of limitations part still. Well, I understand because I'm trying to figure out how this deliberate indifference discovery rule is going to work. And so what I'm saying here is that the plaintiffs in all of these five appeals have alleged that they knew, this was common knowledge at Ohio State, and they knew at the highest levels of Ohio State. They've alleged two athletic directors, they've alleged an assistant vice president of the university. Wait, wait, wait. This is putting on a light bulb for me. So what you're saying is that the Garrett and Alf plaintiffs knew two things. You're saying they alleged, one, at the time that the doctor was examining us, we knew that was abuse. And you're saying that they alleged that Ohio State knew at the time that the doctor was abusing them? Yes, they alleged that it was known and reported at the highest levels of the university at the time. At the time that they were being abused? Yes. Well, that does seem different, but that's not what I understood the allegations to be. But if, I mean, tell me where those allegations are. Because I get the piece where it says, where the Alf and Garrett plaintiffs said, at the time we were being abused, we understood it to be abuse. I get that. They said that in their reply brief. What I didn't understand is that those plaintiffs also said, at the time we were abused, Ohio State knew we were being abused. It is in the Garrett-Alf complaints in paragraphs 509 to 518 and paragraph 519 in the consolidated complaint. And that is where they list all of the persons in Ohio State who knew at the time and were aware of it and took no action to remedy it. And in the, let me get you a site here on this. And in the Ratliff, Nutter, and Canales case. And these allegations established that not only did Ohio State know at the highest levels at the time, but plaintiffs knew at the time that Ohio State knew. This is plaintiffs' allegations that these persons in Ohio State knew. Oh, but not. But that's not, go ahead. No, go ahead. No, no, it's fine. But not that plaintiffs knew that Ohio State knew. Which I think is the discovery rule established by Snyder Hill. Okay, I respectfully, I understand. I understand what you're saying, but I respectfully disagree that given these allegations, that it is anyway plausible under a de novo review for these allegations about who all knew about it and for the plaintiffs to then say, but we didn't know even though all these other persons did. And so, let me give you the site from the other complaints. In the Nutter complaint, it's paragraph 23. Ratliff amended complaint, paragraphs 115 to 116. And Canales, paragraph 22. And that's where there's some reliance on the retaliation aspect because those group of plaintiffs made the two-year deadline almost to the day, I guess, and that would keep a retaliation claim alive, forgetting for a moment about whether it even applies. But at least that claim would have gotten under the wire. Well, the unlawful retaliation claim here, Your Honor, is actually alleged to have occurred in 2018 and 19, not back 20 to 40 years ago. Right, that's what I'm saying. So, well, but they're claiming that they retaliated against in the present day and they do not allege who did it other than they say it is former employees, friends, and or benefactors of Ohio State. Their conduct cannot be imputed to Ohio State. And they allege no adverse school-related action in the retaliation, unlawful retaliation claim here. Well, that's the problem substantively with it, but I thought that at least the filing dates would have fallen within the two-year statute of limitations. The two-year statute of limitations since the announcement of the investigation in July of 2018? Or I'm not sure which announcement. The unlawful retaliation claim, I think I heard, has been abandoned, but it is... I don't think they said it's abandoned, they said they're relying on their briefs. Okay, they rely on their briefs. Let me say this in their briefs and in their complaint then. They allege, they did not allege any person by name who was retaliated against other than one plaintiff who is not a plaintiff in this case and is not an appellant. And I will, I can say his name if the court wants his name. And they alleged another gentleman. Otherwise, they said everybody else is just generally. And they said that this happened even though it's in the 2018-19 period they claim the retaliation occurred. Straus, of course, is gone. Larkins Hall is gone. And what they're saying is happening to them has nothing to do with a school-related activity. Why does it have to do with, why do you have to retaliate? Why does the retaliation have to involve a school discipline if the standard on retaliation is it would dissuade a reasonable person from making the complaint? I'm citing to the Bowes v. Bea case by this circuit in 2020 in which that was one of the four elements that was set forth. I'm sorry, what? The Bowes v. Bea, B-E-A case from this circuit in 2020 in which the four elements were set forth for a Title IX retaliation claim. And the third element is that the plaintiff must have suffered an adverse school-related action. And that adverse school-related action are things such as class suspensions, in-class punishment, failing or bad grades. That doesn't say that there can be no other way to retaliate. I mean, that's the normal situation. But here they're out of school. They are. They're no longer students and they no longer have any connection. Yes, but what if it's a legitimate Title IX complaint? Let's say the statute of limitation hasn't run and they found out after they graduated and they're making the complaint. You're saying that a defendant in that situation can retaliate in every way imaginable as long as it's not a school discipline? That's not what they're alleging here, but I'm saying for Title IX purposes it has to be denial of educational benefits. Well, I know, but I'm asking you the question. Hypothetically, people were discriminated under the statute, discriminated against. Their complaint happens to come after they graduated, but it's timely. And then the defendant educational institution starts retaliating. You're saying they can retaliate in any way possible as long as it's not something having to do with the students in school? I'm saying that if it's alleged that the retaliating parties are former employees, friends, and or benefactors. But that's a different issue. That's a different issue. That's whether they have identified proper defendants or whether such persons can be liable under the statute. That doesn't relate to whether what happened is retaliation. That's a different argument. There may be a different cause of action, but not a Title IX cause of action for retaliation. So you're essentially relying on, I guess it's the third prong of the test. I am, Your Honor. And there must be also a causal connection between the protected activity. If that applies and there wasn't any, then the timing doesn't make any difference because they can't meet that prong of a retaliation. That's correct, Your Honor. And the reason you think they can't meet that prong is because Title IX requires a deprivation of an educational opportunity. And you can't deprive somebody of an educational opportunity by retaliating using non-educational means. That's your argument. Well, you're also saying that the case law supports that, although there is at least one case that expands the concept broader than that. That's correct, Your Honor. I say the case law says that, and I say Title IX is dealing with discrimination in education, not in the world at large, where people are interacting as they alleged they were interacting here, even though we don't know who the plaintiffs are and they're not before this court. And some of these arguments across the board, it's not relevant to the resolution of what's before us today, but one has to keep in mind that this was a motion to dismiss, and if a case goes forward, there will likely be summary judgment motions, at which times a lot of the kinds of things you're talking about will have to be dealt with. There well could be summary judgment motions, yes, Your Honor. I agree with that. I'm sorry, my time is up, but I wanted to touch on the recusal issue, if I could, for just one moment. Yeah, I think we have a few more questions. Okay, sure. Judge White has something she'd like to ask. Okay, so the recusal. You have someone who is a professor and disclosed that, and that was okay? Correct, Your Honor. So then it comes out that his wife has financial dealings, not just with the university, but that revolve around the football team, which is, those were, the football players were especially involved in this incident. And then the cruise, which isn't just like a general Ohio State cruise, it involves a medical department. And here we're talking about the medical department sort of allegedly sort of having some knowledge and covering it up. And the cruise I don't think was disclosed. I think that was something that somebody discovered. So why isn't there an appearance of impropriety? And then also I think the judge gave some numbers on the value of his wife's contract, but the news reporters had some other number. I don't, you know, it's $60,000, $300,000. But why isn't this at least an appearance of impropriety? First of all, you are correct. There is no financial interest by the judge, his wife, or the judge's wife's flag store, in the university or the subject matter of this. So that prong should be gone. There is no financial interest there. In terms of the Buckeye Cruise for Cancer, that is by the James Comprehensive Cancer Center, which is an independent, non-affiliated, it's affiliated in the sense it's on campus, but it's an independent operation, not part of the Ohio State University and its undergraduate organization. It raises money for cancer, and I know of nothing that says that judges cannot support the funding and attempting to find a cure for cancer or treatment of cancer. So it is not what is at issue in the Straus litigation. That was the health center. Is it affiliated with the medical school? They use the cancer hospital for teaching and so forth, but the medical school is part of the university. And to my knowledge, the Comprehensive Cancer Center is a treatment facility independent, and the Buckeye Cruise for Cancer is part of that independent effort to raise money for that regional cancer treatment center. So that is separate and apart, and I don't believe it has anything to do with the Ohio State University in terms of what we're discussing here. It clearly is on campus, and it's by the hospital, but it's an independent entity. Some of these things are kind of turned on the eye of the beholder. Our standard of review is differential as to the trial judge's decision whether to recuse or not. Yes, the standard is an abuse of discretion, and you must find a definite and firm conviction that the trial court committed a clear error of judgment. He disclosed, by the way, his adjunct professorship, and no one had a problem with it in January of 2019. Two and a half years, people were perfectly happy, and I'll tell you why they were happy. And I want to say this for Judge Watson. He served as a model of judicial temperament. He was patient. He was free from bias. Is this your characterization of Judge Watson, or are you reading from something your opponents said? No, I'm reading from something that I feel in my heart, and anyone who watched him in this litigation. That's great, but your opponents feel differently, so. No, they have not accused him of any bias or prejudice. Well, they think he should have recused, so presumably they think he should have recused because he's biased or prejudiced. They didn't think he should have recused during the two and a half year period in which he was conducting himself. They didn't know about his wife's business. But they knew about his professorship. I know, but they're. Great, so he disclosed that he was an adjunct professor. Nobody thought that was grounds for recusal. That's correct. Isn't that different? It's two and a half years later, then they did move on those grounds as well. But you're making it sound like they didn't like his rulings, and therefore all of a sudden they're objecting to him being on the case. But they objected in response to an article that provided them with information that the judge didn't disclose. I mean, it's just odd that it wasn't disclosed. Well, I'm not going to speak for the judge in that regard, but the Flag Store was owned by his mother-in-law before. She passed it on to his wife. When did his wife take it over? I think it was in either 2016 or 2017. So it was while this case was pending. It was before the case was pending. The first case was filed in July. No, no, I mean she already owned it when this case was pending. She did. And she was not directly, nor was the judge, deriving financial benefit from the university. So the judge may well have not understood that he had an obligation to disclose that because the rule says you have to recuse when you have a financial interest. He may have read that and said, well, I don't have a financial interest, so I don't need to disclose this flag shop. Well, then why did he disclose that he's a professor? Because he understood as an adjunct professor that he did need to tell them that because it was waivable and he wanted them to know that. Wait, you think it's a waivable conflict? I do think the adjunct professorship, if disclosed, can be waived. It's not a financial interest. Yeah, but you think it would be a conflict if it weren't waived? No, I'm saying if disclosed, it can be waived. But so could the other. I'm asking what's the difference? What's the difference between him being a professor and getting whatever remuneration he gets from that, and his wife having contracts with effectively the football team or the athletic department? I'm not sure where the football team came from, but I have not seen that anywhere in any opinion or any aspect of this case. So I'm not sure where that is, Your Honor. But I will say that the disclosure of the adjunct professorship can be accepted and was accepted and was waived for two and a half years by all the parties to the case. So the financial interest, however, as the court pointed out, on the licensing, they are one of 400 entities that are licensed to sell Ohio State merchandise, and they actually pay money to Ohio State, not vice versa for the right to sell the trademark items. In terms of the vendors, he was one of, I think it was 400,000 vendors that sell to Ohio State. The flags that they allege that were sold were in 2016 and 2017, before the cases were filed. And he says in terms of the licensing amounts that they earn from the licensed materials, it's .89 percent, a de minimis amount, of the store's revenue. But what about her? What about her businesses? I understand you're saying that she had to pay, but then she also got revenue by selling those items. So the license was valuable to her, right? Correct. The .89 percent involves any sales to Ohio State by her store. But, I'm sorry, .8 of her business or Ohio State's? Her business. Okay. Her business. And that's based on that $67,000? It's based on the opinion that Judge Watson wrote, and which is the only record of this case. Right. What about the newspapers that came up with an entirely different figure? I'm not familiar, but newspapers, I don't believe, are record evidence in this case. Yeah. I mean, I think that it's an interesting question when the findings of fact are – I mean, I just don't – it's an interesting question, the way we review these claims, when the district court makes the findings of fact about the district court. But that's the way this goes. I mean, that's how it is. Let me ask one further question. What is your view if we were to rule – let's say we were to rule for your opponent on the recusal issue, what would happen to the cases below? Would they – I believe the cases – What would happen? Would they proceed on separate tracks now? No, I think they would have to be separated out, and if you would rule for the plaintiffs in that regard with recusal. But I also think, and Judge White raised an interesting question, does this mean that everything that happened before has now been erased? And I think that would be not a good development. But I think that is the problem, and if you're going to tell us that the judge shouldn't have ruled on anything at any time during the course of this, then I'm not sure where we end up. Well, they've – Go back and remand. They've waived that. They've made it clear that that's not what they were asking for. So it's just not an issue. I'm not sure what they're asking for anymore then, Your Honor, because when – the other parties, and there were 532 plaintiffs, the other parties were perfectly comfortable with the integrity of Judge Watson. And so I'm hard-pressed to understand, but I'm assuming if these folks are not now pleased with Judge Watson, that there must be some way to carve them out and let the others go forward with him. But I don't know because I'm not involved in what I would call the procedural process. These cases were all brought together, and were treated together. And yet my suspicion is that this gets remanded, that people are going to have to sit down and decide what's going to happen anyway. So I'm going to leave it in the good hands of this panel. I just don't believe he should be recused. And I understand that when I give my testimony about him, I'm giving it from my heart, okay? But I don't believe that the abuse of discretion standard is met here, and he should not be disqualified. Thank you. Thank you.  Thank you, Your Honors. Just a couple of points, Your Honors. Thank you. On the recusal issue, I would say that just because the Snyder-Hill Group didn't move to recuse, doesn't mean that they are perfectly comfortable with Judge Watson remaining on the case. I think the issue here, and over which this Court looks at an abuse of discretion, you can review the record, and you can provide on remand that the parties, the plaintiffs, the parties, and the public at large, have a judge who doesn't have ties to one of the parties. And on the issue of whether this set of cases is somehow distinguishable from Snyder-Hill on the facts, I wanted to address a couple of points and hopefully clarify what my colleague stated. First question is whether the plaintiffs in this case are different than the plaintiffs in Snyder-Hill because they all knew that they were abused at the time of the abuse. First of all, this isn't a correct reading of the allegations in the complaint. Just like in the Snyder-Hill case, there were plaintiffs who did not know that they were abused at the time, there were plaintiffs who may have known they were abused, but this is not the relevant inquiry Snyder-Hill tells us. Although plaintiffs differ as to whether they knew at the time that Strauss abused them, they all allege they couldn't have known about Ohio State's responsibility. And that's from the Snyder-Hill case at 694. And then on the second piece of it, Ohio State today suggests that the Garrett case is distinguishable in that the plaintiffs here alerted higher-ups. The sites to the record that counsel gives are sites that describe the higher-ups at Ohio State that we learned had knowledge back then, but we learned it from the Perkins-Cooley report in 2019. That's where those facts come in. And even those plaintiffs who may have made reports, any reporting they made doesn't affect the pre-assault claims that are at issue here. Wait a minute. I'm not sure I understand. So if a plaintiff was physically abused, understood at the time what just happened to me was abuse, and then reported it to the university to somebody who would be, in Title IX terms, an appropriate person, then they know they were abused and they know that Ohio State knows they were abused. Do you disagree with that? I don't disagree with that. But maybe that's not the facts of this case? I think that the allegations in the Garrett and Alf case are similar to the allegations in the Snyder-Hill case. And I think that the pre-assault claims, they are derived from the fact that no plaintiff at the time they were abused could have known that Ohio State's deliberate indifference to the first report it got in 1979 caused that abuse to happen. And yet the argument is made that in establishing the egregiousness of what went on, it's everybody knew. That's kind of what the claim is. It sort of defies reality. It's shocking. It's shocking. And we look forward to getting into those issues in the district court, in discovery, and putting it all before a jury. But I think what Judge Guy is saying is that the complaint says everybody on Ohio State's campus at the time knew that this doctor was doing that, and yet your plaintiffs say they didn't know and Ohio State didn't know. I'm just saying I'm not sure you want to agree with what Judge Guy just said. Well, I do think that the Snyder-Hill case tells us that the fact that even if plaintiffs knew they were abused, and even if the general public knew what Strauss was doing, and even if others knew, there's no way that the plaintiffs could have known that Ohio State as an institution had this knowledge. So everybody knew except Ohio State? The general public knew, the student body knew, everybody knew but Ohio State? That's your allegation? I don't believe so. I think the allegations are, as set forth in our complaints, identical to the Snyder-Hill allegations. I mean, that might be right. And then the final point regarding the retaliation claim, I indicated that we would rest on the briefing for that. One point I wanted to address is Title IX doesn't just deal with what's going on in education, but Title IX provides restrictions and obligations on funding recipients. So that would be the issue here. But it tells funding recipients that they can't deny somebody an educational opportunity based on various characteristics or activities, whatever. So I think the point is, are you denying somebody an educational opportunity when you retaliate for making a Title IX report and your retaliation does not come in the form of the deprivation of an educational opportunity? I'm sorry, can I ask you to... So I think the question is, does the retaliation have to come in the form of the deprivation of an educational opportunity because Title IX only forbids grant recipients from discriminating with respect to educational opportunities. They can discriminate with respect to employment opportunities. They're barred by Title VII or Title VI from doing that, but not by Title IX. I think that's the question. And I think for that, we would rely on the case law that's cited in the briefing and this court's review of the issue. I'm sorry, your what? I think we would rely on the case law that's cited in the briefing for this. Your Honors, I think in sum, Snyder Hill neither overlooked nor misapprehended any point of law or fact and that its holdings, which are consistent with binding precedent of this court, apply squarely to the facts in our dispositive of the claims that are raised here in the Garrett and Alf cases. So we would ask this court to reverse the district court's dismissal and remand this case to a different judge. Any further questions? All right, thank you. Thank you. We appreciate the arguments of counsel today. They've been very helpful.